# IN THE SUPREME COURT OF IOWA

No. 14–0632

Filed June 3, 2016

**DES MOINES FLYING SERVICE, INC.,**

Appellee,

vs.

**AERIAL SERVICES INC.; CEDAR VALLEY AVIATION, LLC;** and **KIRK P. FISHER,**

Appellants.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

Defendants seek further review of court of appeals decision affirming a grant of summary judgment on counterclaim based on statutory immunity. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

John R. Walker Jr. and Kate B. Mitchell of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellants.

Steven V. Lawyer of Law Firm of Steven V. Lawyer & Associates, P.L.C., West Des Moines, for appellee.

**CADY, Chief Justice.**

In this appeal, an aviation company challenges the application of a statutory immunity provision to its claim of a breach of the implied warranty of merchantability found in the Uniform Commercial Code (UCC) arising from an alleged defect in product design or manufacturing. On our review, we must determine whether the immunity provision only applies in tort cases or if it also applies to contracts. We hold the statutory immunity only applies in products liability cases involving personal injury or property damage, not in cases based solely on economic loss. On our review, we affirm in part and reverse in part the court of appeals, reverse the district court judgment, and remand.

## I.  Factual Background and Proceedings.

On February 20, 2009, Cedar Valley Aviation, a wholly owned subsidiary of Aerial Services, Inc. (ASI), brought a Piper 522AS (Cheyenne II) in for maintenance to Des Moines Flying Service, Inc. (DMFS). Among numerous other checks and repairs, DMFS noted both the pilot's and copilot's windshields were "delaminated" and installed new windshields. The replaced windshields were original to the aircraft, thirty-three years old. The new windshields cost $19,323.63 each with an additional $6300 charge for labor. The entire bill, dated August 31, 2009, included many other services and totaled $69,655.58. No warranties or disclaimers were contained on the invoice.

Replacement windshields in aircraft are limited to the part number in the original type design or one approved under a Parts Manufacturing Authorization. The windshields DMFS installed were the part specified by the manufacturer, Piper Aircraft, Inc. (Piper), and manufactured by PPG (Pittsburgh Plate Glass) Industries, Inc. No other windshield was approved for installation under a Parts Manufacturing Authorization.

DMFS is an authorized dealer for Piper parts. Piper provided a limited warranty on parts.[1] The warranty extended for six months after purchase of the part, not to exceed twenty-four months from when the part shipped from the Piper Factory. According to the dealer agreement between DMFS and Piper, DMFS was required to ask each customer to read and acknowledge in writing the warranty policies for the parts provided.

DMFS purchased the windshields from Piper. Piper had inspected the windshields to confirm they met with design specifications prior to sale. DMFS did not provide ASI with a copy of Piper's written warranty or otherwise inform ASI of the limited time period covered by the warranty for any of the parts installed. DMFS installed the windshields sometime between February 20 and August 30, 2009, resulting in February 28, 2010, as the last possible date for Piper's warranty coverage.

On June 24, 2010, ASI was making a routine photography flight at 24,000 feet when the copilot's windshield cracked without impact from another object. The pilot performed an emergency descent and proceeded to Des Moines for inspection and repair. The crack occurred a few days shy of ten months after the new windshield was installed and the plane had been returned to ASI. ASI submitted an affidavit from an expert stating that the average life of the windshield should be "ten (10) or twenty (20) years absent improper installation, a product defect, or an

---

[1]The warranty limited Piper's liability to repair or replace any defective part that fails during the warranty period. It also expressly provided in red capital letters that Piper gave no implied warranty of merchantability (or other warranty express or implied). Other provisions excepted Piper from liability for general consequential, incidental, or punitive damages including those arising from personal injury or death, property damage, or economic loss, including loss of use or profits.

impact with a foreign object." No person or property (other than the windshield) was harmed by the crack in the windshield.[2] Only economic losses resulted—the cost of the windshield repair and the cost to hire another aviation company to complete contracted work during the repairs.

On June 29, 2010, DMFS replaced the cracked copilot's windshield, returned the aircraft, and invoiced ASI on June 30. The invoice total for the part, labor, and adhesive used to install the part came to a total of $23,046.08. Of that total, $19,323.63 was the cost of the replacement windshield. Trident Engineering Associates examined the broken windshield to determine the cause of the crack. The firm made three findings:

1. the primary crack in the pilot's windshield from N522AS originated at a point on the ground edge of the exterior glass lamination;
2. the point of origin was most probably a grinding mark which raised the local stress on the edge of the outer glass ply and initiated cracking; and,
3. there is no evidence of impact by a foreign object.

ASI refused to pay the June 30 bill from DMFS. On October 22, DMFS brought suit against ASI in Polk County for breach of contract (for failure to pay the invoice) and fraudulent misrepresentation (for assurances of future payment made to get DMFS to release the aircraft and give up its artisan lien). On January 24, 2011, a change of venue was granted moving the case to Black Hawk County. Upon transfer, ASI raised affirmative defenses regarding negligent inspection and installation and defective product. ASI also counterclaimed against

---

[2]If other damage or injury had occurred, PPG Industries, Inc. would have been strictly liable.

DMFS for product defect, negligence for failure to inspect, negligent installation, res ipsa loquitur, breach of warranty of implied merchantability, breach of implied warranty of fitness for a particular purpose for the windshield, and breach of implied warranty of fitness for a particular purpose for the services installing the windshield.

On November 9, ASI filed a cross-claim against Piper, alleging product defect, negligent inspection, and breach of implied warranty of merchantability. On July 13, 2012, Piper moved for summary judgment, claiming the economic loss doctrine barred recovery of economic damages against Piper, citing Iowa Code section 554.2318 (2009) (limiting third-party warranty recovery to one "who is injured by breach of the warranty"). In a reply to the resistance to summary judgment, Piper asserted for the first time it was immune from suit under Iowa Code section 613.18. On December 4, the district court found ASI was not in privity with Piper and granted Piper's motion for summary judgment, as the third-party plaintiffs could not recover indirect economic losses from Piper.

On December 19, DMFS filed a motion for summary judgment on all of ASI's counterclaims and partial summary judgment on the original claims. DMFS also argued the economic loss doctrine, lack of control for the res ipsa loquitur claim, immunity under section 613.18, a failure to establish elements for the implied warranty of fitness for particular purpose, and that delivery of the aircraft to DMFS for repair created an implied contract under which no party had alleged DMFS's performance was defective. ASI conceded the economic loss doctrine barred the product defect, negligence, and res ipsa loquitur claims. However, ASI alleged that the grinding mark was not the sole cause of the damage to the windshield and the installation process may have been part of the

cause of the crack.[3]  ASI further contested the implied warranty of fitness and the contract claim.  ASI argued the costs of the replacement windshield and installation are equitable benefits owed to ASI for the sale and installation of an unmerchantable windshield.

On February 7, 2013, the district court granted summary judgment in favor of DMFS on the tort claims based on the economic loss doctrine.  As to the implied warranty of merchantability, the district court found ASI did not set forth facts under which the crack arose from anything other than a product defect and barred the claim under Iowa Code section 613.18.  The implied warranty of fitness for a particular purpose claims were denied because DMFS had no reason to know the windshield would not be put to anything other than ordinary use (ordinary use is a merchantability claim) and had no discretion in what windshield to install.  The court denied DMFS summary judgment on its breach of contract claim, finding a genuine issue of material fact.

On May 6, DMFS filed another motion for summary judgment, this time on the affirmative defenses offered by ASI.  As support, DMFS argued that the February 7 summary judgment ruling decided all the defenses.  ASI resisted, but the court found in DMFS's favor on September 12.  A bench trial was held on October 21 on the breach of contract issue after the fraudulent misrepresentation count was dismissed at the request of DMFS.  The court found no evidence of any factor other than the grind mark causing the windshield crack and that the defect was concealed beneath a seal attached during manufacturing. The court held the defect in the windshield did not negate ASI's duty to

---

[3]DMFS notes that if the installation was part of the problem with the windshield, that claim would be under the implied warranty of workmanship, not merchantability.

pay for the replacement costs incurred in June 2010 and ordered ASI to pay the invoice plus interest.

ASI appealed the judgment, and DMFS cross-appealed the calculation of interest. We sent the case to the court of appeals. The court of appeals held that the UCC applied to the action, but that the claim was barred under section 613.18 immunity because the plain language of the statute had no limiting language excepting suits claiming economic loss based on contract law from its coverage. The court of appeals also recalculated the interest owed DMFS to a lower rate and remanded for entry of the award. DMFS does not appeal, and we do not address, the interest calculation. ASI applied for further review on the question of the applicability of section 613.18 immunity to economic losses under section 554.2314.

## II.  Scope of Review.

"We review the district court's summary judgment ruling to correct errors at law." *Vossoughi v. Polaschek*, 859 N.W.2d 643, 649 (Iowa 2015). Our review is limited to determining whether the law was applied correctly or whether there is a genuine issue of material fact. *Sanford v. Fillenwarth*, 863 N.W.2d 286, 289 (Iowa 2015). In this case, no genuine issue of material fact is in dispute, and our decision will rest entirely on interpretation of law. We concur with the court of appeals decision regarding the application of the UCC to this case and do not address the issue here.

## III.  Analysis.

Today the parties ask us to clarify the application of Iowa Code section 613.18(1)(*a*). The section states,

**613.18 Limitation on products liability of nonmanufacturers.**

1. A person who is not the assembler, designer, or manufacturer, and who wholesales, retails, distributes, or otherwise sells a product is:

*a.* Immune from any suit based upon strict liability in tort or breach of implied warranty of merchantability which arises solely from an alleged defect in the original design or manufacture of the product.

*Id.* We are asked to decide whether the legislature intended section 613.18(1)(*a*) to apply to all retailer breaches of implied warranty of merchantability due to product defect or if the legislature intended the immunity to be limited to cases resulting in property damage or personal injury. Before turning to the provision itself, we must frame how strict liability and the implied warranty of merchantability work with each other and the lines we have drawn regarding liability for each.

### A. Implied Warranty of Merchantability.

The warranty of merchantability . . . is based on a purchaser's reasonable expectation that goods purchased from a "merchant with respect to goods of that kind" will be free of significant defects and will perform in the way goods of that kind should perform.

*Van Wyk v. Norden Labs., Inc.,* 345 N.W.2d 81, 84 (Iowa 1984) (quoting Iowa Code § 554.2314). To be merchantable under the statute, goods must

*a.* pass without objection in the trade under the contract description; and

*b.* in the case of fungible goods, are of fair average quality within the description; and

*c.* are fit for the ordinary purposes for which such goods are used; and

*d.* run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

*e.* are adequately contained, packaged, and labeled as the agreement may require; and

> *f.* conform to the promises or affirmations of fact made on the container or label if any.

Iowa Code § 554.2314(2).

Under section 554.2318, express and implied warranties extend to third-party beneficiaries—for example, remote buyers—reasonably expected to use or otherwise be affected by the goods who are injured by the warranty breach, and the remote seller cannot exclude or modify the extension of the warranty as applied to the injury incurred. *Id.* § 554.2318. Express and implied warranties can generally be limited or modified as part of the contract for sale; disclaimers or modifications of the implied warranty of merchantability require specific language and, if in a writing, must be conspicuous. *Id.* § 554.2316. In fact, "[t]he implied warranty of merchantability is usually disclaimed and to the extent a warranty exists, remedy limitations, notice requirements, or the statute of limitations generally prevent the plaintiff from recovering consequential economic losses." Linda J. Rusch, *Products Liability Trapped by History: Our Choice of Rules Rules Our Choices*, 76 Temp. L. Rev. 739, 761 (2003).

The statutory remedies available for a breach of the implied warranty of merchantability are explained in Part 7 of Article 2 of the UCC, found at Iowa Code sections 554.2701 through .2725. As it relates to products liability, the damages we are concerned with today include both the direct and indirect damages provided for in sections 554.2714 and .2715. Section 554.2714 provides the buyer's "damages for breach of warranty is the difference . . . between the value of the goods accepted and the value they would have had if they had been as warranted." Iowa Code § 554.2714(2). Incidental and consequential damages may also be recovered. *Id.* § 554.2714(3). Incidental damages are those expenses

reasonably incurred incident to the breach. *Id.* § 554.2715(1). Consequential damages include losses caused by the breach the seller had reason to know were possible at the time of contracting and any "injury to person or property proximately resulting from any breach of warranty." *Id.* § 554.2715(2). For the first kind of consequential damages, "the buyer who has accepted goods and then discovers their defects must show that the seller had reason to know at the time of contracting of the buyer's possible losses caused by a breach to recover consequential damages." *Nachazel v. Miraco Mfg.*, 432 N.W.2d 158, 160 (Iowa 1988).

**B. Products Liability and the Economic Loss Doctrine.** "Products liability law broadly refers to the legal responsibility for injury resulting from the use of a product." *Huck v. Wyeth, Inc.,* 850 N.W.2d 353, 373 (Iowa 2014); *Lovick v. Wil-Rich,* 588 N.W.2d 688, 698 (Iowa 1999). "Product liability may involve causes of action stated in negligence, strict liability or breach of warranty." *Bingham v. Marshall & Huschart Mach. Co.,* 485 N.W.2d 78, 79 (Iowa 1992). Warranty theories of liability relate to products liability through the statutory consequential-damages remedy for "injury to person or property proximately resulting from any breach of warranty." Iowa Code § 554.2715(2)(*b*). Section 1 of the Restatement (Third) of Torts: Products Liability, adopted by our court in *Wright v. Brooke Group Ltd.,* 652 N.W.2d 159, 169 (Iowa 2002), imposes tort liability on sellers or distributors of defective products "for harm to persons or property caused by the defect." Restatement (Third) of Torts: Prods. Liab. § 1, at 5 (1998).

We examined the general contours of the economic loss doctrine relating to the recoverability of losses when no injuries are incurred or

property damaged or destroyed in *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503–04 (Iowa 2011) (examining the economic-loss doctrine's relation to contract, tort, and certain exceptions to the general rule). In the case of purely economic damages, a plaintiff cannot recover in tort. *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 692–93 (Iowa 2010). We have found "that a plaintiff who has suffered only economic loss . . . has not been injured in a manner which is legally cognizable or compensable" whether that loss arose out of negligence or strict liability cases. *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 123 (Iowa 1988) (quoting *Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984)). Instead, the parties to a contract are assumed to have allocated that risk of economic loss as part of the contract; therefore, "that document should control the party's rights and duties." *Annett Holdings*, 801 N.W.2d at 503–04.

In *American Fire and Casualty Co. v. Ford Motor Co.*, we developed the distinction between tortious and contractual products liability when damage beyond economic loss did occur, specifying tort theory was "available when the harm results from 'a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a *genuine hazard in the nature of the product defect.*' " 588 N.W.2d 437, 439 (Iowa 1999) (quoting *Nelson*, 426 N.W.2d at 125). Thus, if the damage resulted from a failure of the product to work properly, the claim would sound in contract, but if it resulted from a genuine hazard resulting in a sudden or dangerous occurrence based on the nature of the product defect, the claim would sound in tort. *See id.*; *Nelson*, 426 N.W.2d at 125.

Under contract law, the economic loss doctrine can apply when "a contractual chain of distribution lead[s] to the defendant." *Annett*

*Holdings*, 801 N.W.2d at 505. We have applied this principle when determining the third-party coverage of warranties under Iowa Code section 554.2318 in the context of consequential economic losses. In one case, we looked at the damages a third-party plaintiff could recover from the manufacturer under an express warranty. *Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.*, 526 N.W.2d 305, 306, 309–10 (Iowa 1995). First, we noted that a nonprivity buyer can recover for direct economic loss damages when the remote seller/manufacturer breaches an express warranty. *Id.* at 309. However, when considering the compensability of consequential economic loss damages, we agreed with an academic treatise noting that a seller cannot foresee the uses a remote purchaser might have for the product, that a seller has the right to sell product at a lower price and exclude consequential economic losses, and that the buyer should have to bargain with the immediate seller for consequential economic losses. *Id.* at 309–10 (discussing James J. White & Robert S. Summers, *Uniform Commercial Code* § 11-5, at 539–40 (3d ed. 1988)). We held "nonprivity buyers who rely on express warranties are limited to direct economic loss damages." *Id.* at 310.

Another 1995 case examining the economic loss doctrine under the UCC was *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 107–08 (Iowa 1995). The plaintiff had sued a manufacturer of growth hormones for breach of express warranty and the implied warranties of merchantability and fitness for a particular purpose, as well as under tort theories of negligence and strict products liability. *Id.* at 105. First, we dismissed the tort claims because the cattle belonged to a third party, were not actually damaged by the hormone but simply failed to grow at the rate expected, and the defect did not result in danger to the user. *Id.*

at 106–07. We then turned to Tomka's warranty theories, dismissing his express warranty claim as using the same reasoning as in *Beyond the Garden Gate*—he was not in privity with the manufacturer and only sought consequential economic losses with no recoverable direct economic loss. *Id.* at 107–08. We found the same reasoning applied to disallow using implied warranty theories against remote manufacturers for only consequential economic losses and that allowing such losses would undermine the legislative scheme of the UCC. *Id.* at 108. Instead, we directed the plaintiff to look to the immediate sellers to recover under warranty theories. *Id.* Thus, although the section 554.2318 warranty extension applies to those damaged by defective goods, it does not extend when a remote buyer seeks only economic loss damages. *Kolarik v. Cory Int'l Corp.*, 721 N.W.2d 159, 163 & n.3 (Iowa 2006).

**C. Application.** Our goal in interpreting statutes is to resolve conflicting constructions in a way consistent with the intent of the legislature. *Teamsters Local Union No. 421 v. City of Dubuque*, 706 N.W.2d 709, 713–14 (Iowa 2005). To determine legislative intent, we look to the language used, the purpose of the statute, the policies and remedies implicated, and the consequences resulting from different interpretations. *Iowa Individual Health Benefit Reins. Ass'n v. State Univ. of Iowa*, 876 N.W.2d 800, 804–05 (Iowa 2016). We assess the entire statute and its enactment to "give the statute its proper meaning in context." *Sanon v. City of Pella*, 865 N.W.2d 506, 511 (Iowa 2015). "[A] statute should not be interpreted to read out what is in a statute as a matter of clear English" and should not render terms superfluous or meaningless. 1A Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 21:1, at 163 (7th ed. 2009) [hereinafter Singer].

If two provisions conflict, we construe them to give effect to both, if possible. Iowa Code § 4.7.

The UCC is to be "liberally construed and applied to promote its underlying purposes and policies," which include simplifying, standardizing, and modernizing contract law. Iowa Code § 554.1103. Moreover, "no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided." *Id.* § 554.1104. "[R]emedies . . . must be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed . . . ." *Id.* § 554.1305(1).

Section 613.18 was passed as part of an act on "Liability and Liability Insurance." 1986 Iowa Acts ch. 1211 (codified in scattered sections of Iowa Code (1987)); *see id.* ch. 1211, § 32 (codified at Iowa Code § 613.18). Other examples of provisions found in the Act include a change in social host liability and the dramshop law, insurance assistance, the creation of a tort liability state-of-the-art defense, a new chapter on punitive or exemplary damages, and the creation of a study commission on liability. *Id.* ch. 1211, §§ 11–12, 26–31, 41–42, 44 (codified at Iowa Code §§ 123.49, .92; *id.* § 507D.1–.6; *id.* § 668.12; *id.* § 668A.1). These sections relate to types of tort liability or insurance coverage for that liability, all of which depend on the presence of personal injury or property damage to be in effect. The Act was referred to in the 1986 Summary of Legislation as "a major revision of Iowa's tort liability system," further indicating the legislature's specific intention for the act. Iowa Legislative Serv. Bureau, *Summary of Legislation* 25, 29–30 (Iowa 1986), https://www.legis.iowa.gov/docs/publications/SOL/401754.pdf (describing one modification to tort liability effected by the Act as "[c]reating a retailer's exemption in products liability actions").

The title of the Iowa Code section we seek to interpret, and part of the statute passed, is "Limitation on products liability of nonmanufacturers." Iowa Code § 613.18 (2009); *see* 1986 Iowa Acts ch. 1211, § 32. "Although the title of a statute cannot limit the plain meaning of the text, it can be considered in determining legislative intent." *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004) (quoting *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 163 (Iowa 1999)). This is known as the title-and-headings canon." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 221 (2012) (noting titles and headings can be useful to shed light on an ambiguous word or phrase as tools for the resolution of doubt). "A statute's title may be used only to resolve existing doubts or ambiguities as to the statutory meanings and not to create ambiguity where none existed." 1A Singer § 18:7, at 78–79. We have used this principle—along with our other statutory interpretation rules—to exclude "claims for purely economic loss or non-torts" from the Iowa Comparative Fault Act despite a statutory definition including breach of warranty within the meaning of "fault." *Flom v. Stahly*, 569 N.W.2d 135, 140–41 (Iowa 1997). Similarly, the title of section 613.18, "Limitation on product liability of nonmanufacturers," indicates the statutory immunity limits product liability claims for personal injury or other property damage, not contract claims for damage to the product itself.

Moreover, words must be interpreted in context. *U.S. Bank Nat'l Ass'n v. Lamb*, 874 N.W.2d 112, 117–18 (Iowa 2016). The *noscitur a sociis* canon of construction "summarizes [a] rule of both language and law that the meanings of particular words may be indicated or controlled by associated words." *Peak v. Adams*, 799 N.W.2d 535, 547–48 (Iowa 2011) (quoting 11 Richard A. Lord, *Williston*

*on Contracts* § 32:6, at 432 (4th ed. 1999)). Section 613.18 couples the phrases "strict liability in tort" and "breach of implied warranty of merchantability." Context is king, and this juxtaposition signals the breach of warranty should be construed to require personal injury or property damage apart from the product itself, consistent with strict tort liability and the title of the act.

The legislature knows how to cross-reference the immunity statute and UCC warranty statute with other enactments.[4] Although the official version of Iowa Code section 554.2314 includes the editor's note "Limitation; § 613.18" at its end, that limitation was added by the Code editor and is not an indication of the legislature's intention. If the legislature had intended the retailer statutory immunity provision to defeat contractual warranty claims, it could have done so by adding section 613.18 immunity to the limitations in section 554.2314(1) or to the exclusion and modification of the warranties statute in section 554.2316. Indeed, considering the express modifications and limitations on warranties found in sections 554.2316 through .2318, it seems far more likely that the legislature, if it had intended to do so, would have provided the implied warranty of merchantability does not apply to a seller of a product with any design or manufacturing defects in chapter 554 rather than among the tort liability provisions in chapter 613. The

---

[4]For example, Iowa Code section 554A.1 governing the sale of livestock expressly excludes the implied warranties of section 554.2314 when certain disclosures are made. *See, e.g.*, Iowa Code § 554A.1(1) ("Notwithstanding section 554.2316, subsection 2, all implied warranties arising under sections 554.2314 and 554.2315 are excluded from a sale of cattle . . . if the following information is disclosed to the prospective buyer . . . ."). Conversely, Iowa Code section 455B.803 expressly extends section 613.18's immunity to vehicle recyclers. *Id.* § 455B.803(4) ("A vehicle recycler that performs as required under a removal, collection, and recovery plan shall be afforded the protections provided in section 613.18.").

legislature did not cross-reference either statute to the other. Our job is to harmonize these statutes to give effect to each. Our interpretation does so.

Contrary to the position advocated by DMFS, section 613.18(1)(*a*) cannot be interpreted to grant nonmanufacturing sellers complete immunity from suit in manufacturing and design defect cases. Such a construction would run counter to the construction provision in section 554.1104 against implied repeal and to the mandates of Iowa Code chapter 4 to construe conflicting statutes to give effect to both, promote a "just and reasonable result," and promote public interests over private interests. Iowa Code §§ 4.4, .7; *id.* § 554.1104. The interpretation sought by DMFS would effectively invalidate the implied warranty of merchantability for the majority of consumer and commercial transactions involving product failure. Further, it would place solely on the buyer the entire burden of risk of a product purchased for general use that suffers a manufacturing or design defect but does not injure a person or cause additional property damage. As a result, this interpretation could promote adverse behaviors by product consumers. Here, such a construction would penalize ASI because the pilot of the aircraft took immediate steps to mitigate any potential damage to the aircraft or injury to himself, thereby preventing compensable damage. Moreover, it could encourage reckless behavior so product failure would result in damage and a compensable claim. This kind of harm to consumers and its possible result could not have been the legislature's intention in passing section 613.18.

We hold a products liability case must exist—requiring that personal injury or property damage occur due to a manufacturing or

design defect—to trigger the immunity provision of section 613.18(1)(*a*).[5] In so holding, we utilize the same distinctions consistently used in our cases to determine if a party is liable for damages under tort products liability law and third-party beneficiary warranty claims. If a defective product results only in economic loss, we only allow the buyer to bring a claim under an express warranty for direct economic losses against a remote seller and warranty claims for consequential economic losses against the seller in privity with them unless disclaimed. *See Tomka*, 528 N.W.2d at 108; *Beyond the Garden Gate*, 526 N.W.2d at 310. Once any property damage or personal injury exists resulting from a manufacturing or product defect, the manufacturer becomes the liable party under tort law and Iowa Code section 554.2318. The manufacturer then has access to the tort defenses and any permissible disclaimers made in the warranty. *See* Iowa Code §§ 554.2316, .2318; *id.* § 668.12 (products liability defenses). In economic loss cases, the immediate seller is liable for the breach of implied warranty, subject to any warranty exclusions, modifications, or disclaimers found in the sales contract. *Id.* § 554.2316.

## IV. Conclusion.

For the reasons stated, we conclude the district court erred in its application of Iowa Code section 613.18(1)(*a*) in a case limited to economic losses. Section 613.18(1)(*a*) immunity only applies to claims that include claims of personal injury or property damage. The decision of the court of appeals is therefore affirmed in part and vacated in part,

---

[5]The federal court also uses this interpretation: "[Defendant]'s statutory protection [under section 613.18(1)(*a*)] from claims of breach of the implied warranty of merchantability is co-extensive with its statutory protection from product defect claims." *Nationwide Agribusiness Ins. Co. v. SMA Elevator Constr. Inc.*, 816 F. Supp. 2d 631, 666 (N.D. Iowa 2011).

and the district court summary judgment dismissing ASI's implied warranty claim is reversed. The case is remanded for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except Wiggins, Mansfield, and Zager, JJ., who dissent.

#14–0632, *Des Moines Flying Serv., Inc. v. Aerial Servs., Inc.*

**WIGGINS, Justice (dissenting).**

The interpretation of section 613.18 the majority adopts does not reflect the intent of the legislature. In interpreting a statute, we observe the following rules:

> The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute.

*Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted).

> The statute in question provides,

> A person who is not the assembler, designer, or manufacturer, and who wholesales, retails, distributes, or otherwise sells a product is:

> *a.* Immune from any suit based upon strict liability in tort or breach of implied warranty of merchantability which arises solely from an alleged defect in the original design or manufacture of the product.

> *b.* Not liable for damages based upon strict liability in tort or breach of implied warranty of merchantability for the product upon proof that the manufacturer is subject to the jurisdiction of the courts of this state and has not been judicially declared insolvent.

Iowa Code § 613.18(1) (2009).

Section 613.18 is not ambiguous; rather, its plain language precludes courts awarding *any* damages in suits based on strict liability or breach of implied warranty brought against nonmanufacturers due to alleged design or manufacturing defects. Had the legislature intended to

extend immunity to nonmanufacturers in suits based on strict liability or breach of implied warranty *unless* an alleged defect resulted in purely economic losses, it could have done so by adding additional language to section 613.18. Instead, the legislature enacted a bill that created broad statutory immunity from such claims for nonmanufacturers and contained no language limiting that immunity based on the damages claimed. The majority opinion ignores the meaning of the plain language of the statute to eliminate immunity for nonmanufacturers in strict liability and breach of implied warranted suits involving purely economic losses. Because the plain language clearly precludes recovery regardless of what damages are claimed, we cannot ignore it to fashion a remedy.

Moreover, the legislative history of section 613.18 clearly demonstrates that, under a proper interpretation of the statute, nonmanufacturers are not liable for *any* damages in suits alleging strict liability or breach of implied warranty based on alleged design or manufacturing defects in products they did not design or manufacture. As early as 1970, we established the principle that a person may collect purely economic damages in suits for breach of an implied warranty under the Uniform Commercial Code.[6] *W & W Livestock Enters., Inc. v. Dennler*, 179 N.W.2d 484, 488 (Iowa 1970). Thus, by 1986 when the legislature enacted section 613.18, it was well-settled law that purely economic losses were recoverable as damages in breach of warranty suits. This fact indicates we should not interpret section 613.18 to limit nonmanufacturers' statutory immunity in breach of implied warranty suits involving defective products they did not design or manufacture to

---

[6]The legislature refers to chapter 554 as the Uniform Commercial Code. Iowa Code § 554.1101.

cases in which the alleged defect caused property damage or personal injury.

The title of the bill the legislature enacted in 1986 clearly indicated the provision to be codified at section 613.18 was intended to "limit[] the liability of nonmanufacturers for claims based upon strict liability in tort or breach of implied warranty." S.F. 2265, 71st G.A., 2nd Sess. (Iowa 1986). The attached bill explanation made clear that if the bill passed, nonmanufacturers would be "liable for damages . . . only where the original manufacturer is not subject to service or has been judicially declared insolvent" in suits for damages in strict liability or breach of implied warranty suits based solely on alleged design or manufacturing defects in a product. *Id.* explanation.

Though the legislature knew Iowa recognized breach of implied warranty as a viable cause of action in cases involving purely economic losses, it enacted a bill granting broad statutory immunity from breach of implied warranty claims to nonmanufacturers. The bill plainly did not contain an exception to that statutory immunity for breach of implied warranty claims resulting in purely economic losses. Even the Code editor recognized the legislature's enactment of section 613.18 unambiguously limited claims for breach of implied warranty against nonmanufacturing merchants. Thus, the Code editor added a note to the 1987 Code following section 554.2314 indicating section 613.18 constituted a "Limitation" on the availability of breach of implied warranty claims provided for in that section. Iowa Code § 554.2314 (1987).

The note indicating section 613.18 constitutes a "Limitation" on the scope of claims available under section 554.2314 has appeared in every subsequent edition of the Code. *See* Iowa Code § 554.2314 (2015).

Yet the legislature has not acted. Surely, if the legislature thought the Code editor incorrectly interpreted section 613.18 to limit the scope of claims that may be brought under section 554.2314, it would have enacted clarifying legislation by now.

The majority asserts interpreting section 613.18(1)(*a*) to grant nonmanufacturers complete immunity from suit in manufacturing and design defect cases would impliedly repeal the cause of action afforded against sellers under section 554.2314. However, the majority does not deny the legislature's subsequent passage of section 613.18 was intended to limit the cause of action provided for in section 554.2314. This dispute concerns the scope of that limit. The majority has grafted a limiting principle onto section 613.18(1)(*a*) that has no basis in the text of *either* section 613.18 or section 554.2314.

In contrast, my interpretation of section 613.18 gives the words the legislature adopted in that section their clearly intended effect. Section 613.18(1)(*a*) grants nonmanufacturers immunity from strict liability and breach of warranty claims arising due to product defects. Iowa Code § 613.18(1)(*a*). Section 613.18(1)(*b*) clarifies that a nonmanufacturer may conclusively establish it is not liable for damages when such claims are brought against it by proving the courts of this state have jurisdiction over the product manufacturer and the product manufacturer has not been declared insolvent. *Id.* § 613.18(1)(*b*). Section 554.2314 permits breach of warranty claims not premised on product defects against nonmanufacturing merchant sellers. Unlike the interpretation adopted by the majority, this interpretation gives effect to section 554.2314 without grafting an arbitrary limit onto the plain language of section 613.18.

Under a proper interpretation of section 613.18(1), Des Moines Flying Service is not liable for *any* damages for breach of implied warranty based on the alleged manufacturing defect in the windshield it did not manufacture, including damages based on purely economic loss. The majority has narrowed the statutory immunity that section 613.18 grants nonmanufacturers in claims based on design or manufacturing defects by crafting an exception to it. Had the legislature intended to create such narrow statutory immunity for nonmanufacturers, it could have done so. However, the statutory text provides no indication that was its intent. I cannot agree with the majority's reasoning or its conclusion. Therefore, I dissent.

Mansfield and Zager, JJ., join this dissent.