# IN THE SUPREME COURT OF IOWA

No. 18–1142

Filed June 12, 2020

**STATE OF IOWA,**

Appellee,

vs.

**MONTREAL SHORTER,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Cynthia M. Moisan, District Associate Judge.

The defendant seeks further review of a court of appeals decision affirming his conviction for carrying a dangerous weapon while intoxicated. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED FOR NEW TRIAL.**

Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Zachary Miller, Assistant Attorney General, John P. Sarcone, County Attorney, Jesse Ramirez, Assistant County Attorney, for appellee.

**OXLEY, Justice.**

The defendant was found guilty by a jury of violating Iowa Code section 724.4C, which criminalizes carrying a dangerous weapon while intoxicated. However, the jury instructions permitted the jury to convict if they found the defendant carried—or possessed—the dangerous weapon.

After the court of appeals affirmed the defendant's conviction, we granted further review to address whether section 724.4C extends to "possessing," as instructed to the jury. We now hold Iowa Code section 724.4C prohibits only carrying, which requires more than mere possession, and the jury instructions were thus erroneous. We further conclude this error requires reversal. Therefore, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for retrial.

## I. Background Facts and Proceedings.

On December 23, 2017, Montreal Shorter and a friend attempted to enter the Minx Show Palace, a "gentlemen's club" in Des Moines, around 2 a.m. Shorter and his friend had been drinking at the friend's apartment before coming to the club, where Shorter had previously left his car. Two security guards, Matthew Carroll and Anthony Weber, were working the door that night. Weber testified that when Shorter and his friend sought entry into the club, he asked whether Shorter or his friend had weapons on them. Shorter responded that he "kept [his] shit in the car."

Security denied Shorter and his friend entry to the Minx based on a dress code violation. Weber testified the friend then "squared up" with him, and after giving the friend three warnings, Weber pepper sprayed him. During this time, Carroll called the police.

Weber testified he heard Shorter say he was going to get his gun, and he walked toward his vehicle. Both Carroll and Weber testified that

after the pepper spray altercation, Shorter reached into his vehicle for something, but neither saw what Shorter reached for or saw anything in his hand. Both also testified the Polk County sheriff's deputies were just entering the parking lot with lights and sirens on, and Shorter tossed back whatever he had reached for and walked away from the car. Neither security guard ever saw a gun.

When officers arrived, they found Shorter and his friend in the parking lot ten to fifteen feet behind Shorter's car. They initially talked to Shorter and his friend and assisted with treating them for the pepper spray. Deputy Bradley Hook interviewed the security guards, who told him that Shorter commented he "always carr[ied]" as he started walking toward his car. Deputy Hook testified that based on this statement, he went to Shorter's car, found the door to the car open, and saw Shorter's gun in a soft holster sitting on top of the center console. Carroll similarly testified Shorter "left his door open."

Shorter testified to a different version of events following the pepper spray altercation. According to Shorter, he did not return to his car but waited for the police in the parking lot because he knew they were on the way. Shorter testified he never entered his car or touched his gun after returning to the Minx. He also testified that he never opened the car door, and he disputed that his car door was open. Shorter did admit he kept his gun, for which he had a valid carry permit, in his center console, and wherever Deputy Hook found the gun—whether in or on the console—is where he had previously left it before he began drinking at his friend's apartment. The jury was shown dash camera footage of the officers arriving on the scene, but the video does not reveal whether the car door was open when the police arrived.

When Deputy Hook saw the gun, he alerted other officers to handcuff Shorter and his friend. Shorter insisted he was not intoxicated but blew a 0.113 in a subsequent preliminary breath test. Shorter was taken into custody for carrying a firearm while intoxicated.

The State charged Shorter with violating Iowa Code section 724.4C on January 31, 2018. On March 12, Shorter waived his right to a speedy trial. A jury trial was held on May 7 and 8.

At trial, the jury received instructions related to the charges against Shorter. Jury Instruction No. 11, the marshaling instruction, directed that the State must prove that Shorter was intoxicated and did any of the following: "a. [p]ossesse[d] or carrie[d] a dangerous weapon on or about his person" or "b. [p]ossesse[d] or carrie[d] a dangerous weapon within [his] immediate access or reach while in a vehicle."

Jury Instruction No. 15 explained that "to carry a dangerous weapon means to support and move it from one place to another." Jury Instruction No. 16 defined immediate access to a firearm as having actual possession or being within close proximity so the person could reach for or claim dominion or control over the weapon. Jury Instruction No. 17 addressed possession, stating,

> The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may have sole or joint possession.
>
> A person who has direct physical control over a thing on his person is in actual possession of it.
>
> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it. A person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing.

If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

Whenever the word "possession" has been used in these instructions, it includes actual as well as constructive possession and sole as well as joint possession.

Shorter objected to Jury Instruction Nos. 11, 16, and 17 to the extent they addressed possessing, as opposed to carrying, a dangerous weapon. The district court overruled the objections, and the jury was instructed about both carrying and possessing a weapon.

At the close of the State's case and again at the close of all the evidence, Shorter moved for judgment of acquittal based on a lack of evidence that the gun was on Shorter's person or within his immediate reach or access while he was inside the vehicle. The State opposed the motions, asserting the act of opening the car door put Shorter within reach or access to the gun on the console to satisfy the statutory requirements. The district court denied both motions, concluding there was substantial evidence to make an inference of guilt.

In the State's closing argument, the State argued that constructive possession alone was enough to convict Shorter, even if the jury disagreed as to whether Shorter carried the gun. Specifically, the State told the jury,

Sub A [section 724.4C(1)(*a*)] is simply that he reaches and he touches the gun. Sub B [section 724.4C(1)(*b*)] is simply that he is -- he doesn't have to touch the gun. It just has to be there and he has to be within immediate reach of that gun. If you believe that he stepped in and leaned in *or if he just opened up that car door and you're standing between an open car door and the center console and that gun's on the center console*, that gun -- anything that's on that center console is within immediate access in reach of an individual.

(Emphasis added.)

Following defendant's closing argument, the State again highlighted the constructive possession portion of the instruction in its rebuttal

argument. The last thing the jury heard before retiring to consider the evidence was from the State:

> But I feel completely comfortable that any rational person that looks at this evidence will determine what happened that night. And what happened that night is simply that the defendant went for his gun, and he was within reach of it when he reached in, and that makes him guilty.

The jury found Shorter guilty of carrying a dangerous weapon while intoxicated. From the bench, the court also found Shorter guilty of public intoxication, in violation of Iowa Code section 123.46.

Shorter appealed, challenging the jury instructions related to "possession." He also asserted his trial counsel was ineffective for failing to object to another instruction involving his prior out-of-court statements. We transferred the appeal to the court of appeals, which affirmed Shorter's conviction. We granted Shorter's application for further review.

## II. Standard of Review.

"We review challenges to jury instructions for correction of errors at law," *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015) (quoting *State v. Guerrero Cordero*, 861 N.W.2d 253, 257–58 (Iowa 2015), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016)), to determine "whether the instruction at issue 'accurately states the law,'" *State v. Mathias*, 936 N.W.2d 222, 226 (Iowa 2019) (quoting *State v. Albright*, 925 N.W.2d 144, 157 (Iowa 2019)). Erroneous jury instructions are prejudicial and require reversal when they "mislead the jury or materially misstate the law." *State v. Benson*, 919 N.W.2d 237, 241–42 (Iowa 2018).

"We review ineffective-assistance-of-counsel claims de novo." *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015).

**III. Analysis.**

Iowa Code section 724.4C, titled "[p]ossession or carrying of dangerous weapons while under the influence," declares,

> 1. Except as provided in subsection 2, a person commits a serious misdemeanor if the person is intoxicated as provided under the conditions set out in section 321J.2, subsection 1, paragraph "*a*", "*b*", or "*c*", and the person does any of the following:
>
> *a.* Carries a dangerous weapon on or about the person.
>
> *b.* Carries a dangerous weapon within the person's immediate access or reach while in a vehicle.

Iowa Code § 724.4C (2018). Section 724.4C was originally enacted in 2010 and significantly modified in 2017. *See* 2017 Iowa Acts ch. 69, § 8; 2017 Iowa Acts ch. 170, § 47. This is our first opportunity to interpret the 2017 statute.

Shorter does not contest that he was intoxicated as defined under Iowa Code section 321J.2.[1] Instead, he argues that "carries" under the statute is narrower than "possesses" and, therefore, Jury Instructions Nos. 11, 16, and 17 improperly allowed the jury to convict him based on conduct not covered by the statute. Shorter argues that because the jury could have convicted him on a finding of possession alone, his conviction must be reversed.

While subsections (*a*) and (*b*) of section 724.4C(1) criminalize only "carr[ying] a dangerous weapon," marshaling Jury Instruction No. 11 added "or possesses" to each subsection, allowing the jury to convict Shorter if he "carrie[d] *or possesse[d]* a dangerous weapon." In addition, as described above, Jury Instruction No. 17 provided a detailed description of "several types of possession," including both actual and constructive

---

[1]Section 321J.2 defines the offense of operating while intoxicated and declares an alcohol concentration of .08 or higher qualifies as intoxication. Iowa Code § 321J.2(1)(*b*).

possession. Unless the term "carries" can be interpreted to include the term "possesses" in the context of section 724.4C(1), the instructions did not accurately state the law.

**A. The Meaning of Iowa Code Section 724.4C(1).** We start by determining the meaning of Iowa Code section 724.4C. Statutory interpretation "begin[s] with the text of the statute." *Mathias*, 936 N.W.2d at 227. When interpreting a particular term, we are bound by any definition provided by the legislature. *Id.* If the legislature does not provide a definition, "we look to the context in which the term appears and give it its ordinary and common meaning." *Id.*

Iowa Code chapter 724 does not define "carry." Nor does it define "possess." Chapter 702, which provides general definitions for the criminal code, similarly does not define "carry" or "possess." Therefore, we must determine the ordinary and common meaning of the words to determine if carrying includes possessing. *Id.*

While "carry" has varying meanings, some of which imply "some degree of possession," *Muscarello v. United States*, 524 U.S. 125, 134, 118 S. Ct. 1911, 1917 (1998), the opposite is not necessarily true. That is, that a defendant engages in "some degree of possession" of a weapon does not necessarily mean that he has also carried it. This is particularly true in light of the additional limiting language contained in section 724.4C(1). It is not enough that the individual "carries a dangerous weapon." Rather, the weapon must be carried "on or about the person" for purposes of paragraph (*a*) or the weapon must be carried "within the person's immediate access or reach while in a vehicle" for purposes of paragraph (*b*). Iowa Code § 724.4C(1)(*a*)–(*b*). These additional limitations must be considered in defining what is required to "carry a dangerous weapon" in violation of section 724.4C(1). *Cf. Muscarello*, 524 U.S. at 132, 118 S. Ct.

at 1916 (addressing "the purely legal question of whether Congress intended to use the word 'carry' in its ordinary sense, or whether it intended to limit the scope of the phrase to instances in which a gun is carried 'on the person' "). These additional limitations make clear that "carries" in section 724.4C(1)(*a*) and (*b*) is narrower than, and does not extend to, mere possession.

Other courts have likewise recognized that "the definition of 'carrying,' which implies that the weapon is on or about the defendant's person, is undeniably narrower than the definition of 'possessing,' which includes both actively possessing and constructively possessing." *James v. State*, 16 So. 3d 322, 326 & n.2 (Fla. Dist. Ct. App. 2009) (holding district court committed fundamental error by instructing jury on "possession of a concealed weapon by a convicted felon," where defendant was charged with "carrying a concealed weapon by a convicted felon"); *see also Gallman v. State*, 14 A.3d 502, 505 (Del. 2011) ("PDW [possession of a destructive weapon] is broader than CCDW [carrying a concealed deadly weapon] because, unlike CCDW, PDW *may* occur in the context of being in the same proximity of where a weapon is found, even though the weapon is not on or about the person or belongings of the defendant.").

Subsection (2) of section 724.4C reinforces our conclusion that possession in and of itself is insufficient to meet the carry requirement of subsection (1). *See* Iowa Code § 724.4C(2); *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 72 (Iowa 2015) ("[W]e read statutes as a whole rather than looking at words and phrases in isolation."); *Phillips v. Chi. Cent. & Pac. R.R.*, 853 N.W.2d 636, 649 (Iowa 2014) (noting that "statutory terms are often 'clarified by the remainder of the statutory scheme' " (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S. Ct. 626, 630 (1988))). Section

724.4C criminalizes what would otherwise be permissible activity with a valid carry permit if the permit-holder becomes intoxicated. *Compare* Iowa Code § 724.4(4)(*i*) (excepting from the carrying violations in § 724.4(1)–(3) persons possessing a valid permit to carry), *with id.* § 724.4C. Whereas subsection (1) of section 724.4C identifies what is prohibited, subsection (2) identifies what is not criminalized, even when intoxicated.

> 2. This section shall not apply to any of the following:
>
> *a.* A person who carries *or possesses* a dangerous weapon while in the person's own dwelling, place of business, or on land owned or lawfully possessed by the person.
>
> *b.* The transitory possession or use of a dangerous weapon during an act of justified self-defense or justified defense of another, provided that the possession lasts no longer than is immediately necessary to resolve the emergency.

*Id.* § 724.4C(2) (emphasis added).

Although section 724.4C is titled "[p]ossession or carrying," only subsection two—which identifies what is *not* criminalized—uses the term "possesses." *Id.* § 724.4C. Subsection (1) refers only to carrying. *Id.* We first note that the title "cannot limit the plain meaning of the text." *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 220–21 (Iowa 2016) (quoting *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)) (discussing the "title-and-headings canon" under which "[a] statute's title may be used only to resolve existing doubts or ambiguities as to the statutory meanings and not to create ambiguity where none existed" (quoting 1A Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 18:7, at 78–79 (7th ed. 2009))). Further, "when the legislature includes particular language in some sections of a statute but omits it in others, we presume the legislature acted intentionally." *State v. Macke*, 933 N.W.2d 226, 235 (Iowa 2019). This distinction between the

subsections reinforces our holding that within the context of section 724.4C, carrying is narrower than possession. The jury instructions that allowed the jury to convict Shorter if he either carried or possessed a dangerous weapon misstated the law.

The State does not seriously contest that the jury instructions misstated the crime of carrying a dangerous weapon in violation of section 724.4C(1). It nonetheless attempts to uphold Shorter's conviction on the theory that any error was harmless.

**B. Is the Instructional Error Reversible?** The State urges us to conclude any error in the jury instructions was harmless and affirm Shorter's conviction. Shorter argues error was not harmless, requiring reversal. On appeal, the parties agreed the error was subject to harmless-error analysis.[2]

Generally, "[r]eversal of a criminal conviction is not required . . . if the error is harmless." *State v. Kennedy*, 846 N.W.2d 517, 527 (Iowa 2014). Our harmless-error inquiry "looks . . . to the basis on which 'the jury *actually rested* its verdict.' " *Id.* (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S. Ct. 2078, 2081 (1993)). "The inquiry 'is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' " *Id.* (quoting *Sullivan*, 508 U.S. at 279, 113 S. Ct. at 2081).

We have articulated the standard for reviewing instructions that misstate the elements of an offense with a focus on prejudice, stating that

---

[2]In his application for further review, Shorter argues his conviction should be subject to automatic reversal. This position is contrary to Shorter's initial briefs, where he urged us to reverse using a harmless-error analysis. We need not address this contention because, as discussed herein, we conclude the instructional error was not harmless and Shorter's conviction should be reversed.

erroneous jury instructions "warrant 'reversal when prejudice results,' " and "[p]rejudice results when jury instructions mislead the jury or materially misstate the law." *Benson*, 919 N.W.2d at 241–42 (first quote *State v. Coleman*, 907 N.W.2d 124, 138 (Iowa 2018)). Once instructional error is established, prejudice is presumed, and the state must prove a lack of prejudice. *See Hoyman*, 863 N.W.2d at 19.

This prejudice standard and harmless error are two sides of the same coin. Asking if the guilty verdict "actually rendered in *this* trial was surely unattributable to the error," *see Kennedy*, 846 N.W.2d at 527 (quoting *Sullivan*, 508 U.S. at 279, 113 S. Ct. at 2081), is another way of asking whether an erroneous jury instruction could have "misle[d] the jury." *Benson*, 919 N.W.2d at 241–42. Likewise, requiring a misstatement of the law to be material before it can be considered prejudicial is consistent with our harmless-error analysis. *See, e.g., State v. Seiler*, 342 N.W.2d 264, 268 (Iowa 1983). In *Seiler*, we explained that error was harmless, and therefore not prejudicial, if the evidence "inescapably le[d] to the conclusion" that the legal error had no effect on the jury's verdict. *See id.* Conversely, in *State v. Schuler*, we concluded erroneous jury instructions were not harmless where we could "not conclude with any degree of certainty that the jury would have found [the defendant] guilty beyond a reasonable doubt had it been properly instructed." 774 N.W.2d 294, 300 (Iowa 2009). These prior cases put meat on the bones of what it means for legally erroneous jury instructions to prejudice the defendant by misleading the jury or materially misstating the law.

Here, the instructions erroneously allowed the jury to convict Shorter based on constructive possession, an instruction exploited by the State during closing argument. Although evidence was presented from multiple witnesses that would be sufficient for a jury to find Shorter

carried the weapon, Shorter's own testimony, if believed, could call into question whether he carried the gun as required by section 724.4C. Depending on how it evaluated the credibility of the witnesses, the jury could have concluded (1) Shorter never carried or possessed the gun, (2) Shorter possessed but did not carry the gun, or (3) Shorter carried the gun. That Shorter was convicted tells us the jury rejected the first of these possibilities, but it does not tell us which of the other two it accepted. The State argues that Shorter's testimony is inconsistent with the second possibility, so the error here does not require reversal. However, the jury can believe some of a witness's story while rejecting other parts. Likewise, the jury is free to credit portions of both sides' evidence and conclude the real story is somewhere in the middle. *See, e.g., State v. Dudley*, 856 N.W.2d 668, 677 (Iowa 2014) ("In our system of justice, it is the jury's function to determine the credibility of a witness.").

Notably, the State pushed the constructive-possession theory in its closing argument, urging the jury to find Shorter guilty if he was standing in the open car door within reach of the gun inside the car on the console, even if he never touched the gun or entered the car—a finding that would credit at least a portion of Shorter's own testimony over other testimony. As in *Hoyman*, we cannot assume that the jury based its conviction on the legally accurate portion of the instruction, "especially . . . in light of the State's rebuttal closing argument." 863 N.W.2d at 15; *see also Benson*, 919 N.W.2d at 246 (holding district court erred in case involving child endangerment, a general-intent crime, and assault, a specific-intent crime, by refusing defendant's requested marshaling instruction to identify which form of intent applied to which charge and that such legal error prejudiced defendant where "the State may have blurred the jury's

understanding of the requisite form of intent for assault causing bodily injury" when it discussed both forms of intent in its closing arguments).

Because we cannot be certain that the jury convicted Shorter based on carrying the firearm, banned by Iowa Code section 724.4C, and not based on constructively possessing it, not banned, we find the misstatement of the law in the instructions was material and likely misled the jury. The instructional error prejudiced Shorter and requires reversal. *See Benson*, 919 N.W.2d at 246–47 (reversing where "Benson was prejudiced because the instructions misled the jury"); *Schuler*, 774 N.W.2d at 300 (concluding defendant was prejudiced by erroneous jury instructions where "[t]he severity and type of [the defendant's] involvement varie[d] from witness to witness"). Therefore, we reverse and remand this case for a new trial.

**C.  Additional Issues.**  Because we are remanding for a new trial, "we take this opportunity to address those additional issues which may arise on retrial." *State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010). Shorter also challenges Jury Instruction No. 18. That instruction stated,

> Evidence has been offered to show that the defendant made statements at an earlier place and time.
>
> If you find any of the statements were made, then you may consider them as part of the evidence, *just as if they had been made at this trial.*
>
> You may also use these statements to help you decide if you believe the defendant. You may disregard all or any part of the defendant's testimony if you find the statements were made and were inconsistent with the defendant's testimony given at trial, but you are not required to do so. Do not disregard the defendant's testimony if other evidence you believe supports it or you believe it for any other reason.

(Emphasis added.) The language used in the instruction came from the previous version of Iowa State Bar Association Uniform Criminal Jury

Instruction 200.44 and concerns what our rules of evidence term "opposing party's statement[s]." Iowa R. Evid. 5.801(*d*)(2). Specifically, Shorter objects to the portion of the instruction that opposing party statements may be used "just as if they had been made at trial."[3]

Opposing party statements are admissible as nonhearsay because they are made by an opposing party, despite otherwise meeting the definition of hearsay. Iowa R. Evid. 5.801(*d*)(2). "They constitute substantive evidence of the facts asserted but are not conclusive evidence of those facts . . . ." *State v. Bayles*, 551 N.W.2d 600, 606 (Iowa 1996) (quoting 7 James A. Adams & Kasey W. Kincaid, *Iowa Practice Series* § 801.9, at 401 (1988)).

That an out-of-court statement by an opposing party is admissible as substantive evidence at trial does not necessarily mean it can be equated with sworn trial testimony. When a person testifies at trial they are put under oath, subjecting them to potential prosecution for perjury. Iowa Code § 720.2; Iowa R. Evid. 5.603. The formalities of being placed under oath, both the presence of an official to administer it and the use of the language "under penalty of perjury," are intended to "bind the conscience" of the person taking the oath, i.e., impress upon them the gravity of testifying. *State v. Carter*, 618 N.W.2d 374, 377–78 (Iowa 2000) (en banc); *see also* Iowa R. Evid. 5.603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience."). In addition, in-court testimony allows the jury to observe nonverbal cues that can assist in judging the credibility of the declarant and the context in which

---

[3]The instruction has since been updated to delete the problematic "just as if made at trial" language. *See* Iowa State Bar Ass'n., Iowa Criminal Jury Instruction 200.44 (2019).

the statement was made. An out-of-court statement is not subject to these protections and therefore cannot be fully equated with in-court testimony made at trial in front of the jury.[4] Even an out-of-court confession does "not warrant a conviction, unless accompanied with other proof that the defendant committed the offense." Iowa R. Crim. P. 2.21(4).

By telling the jury to treat an out-of-court statement as if it had been made at trial, the challenged language of the instruction circumscribes the defendant's ability to explain why the out-of-court statement is less reliable than the in-court sworn testimony. Opposing party out-of-court statements should not be treated "just as if made at trial," and the instruction was erroneous. This does not mean that the instruction is necessarily prejudicial in a given case, but it is a misstatement of the law.

### IV. Conclusion.

Shorter was prejudiced by the erroneous jury instructions. We reverse his conviction and remand this case to the district court for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED FOR NEW TRIAL.**

All justices concur except Appel, J., who specially concurs.

---

[4]For example, Billy Gambini's "I shot the clerk??" turns into a confession when relayed to the jury by Sheriff Farley as an affirmative statement. My Cousin Vinny (Twentieth Century Fox 1992).

**APPEL, Justice (concurring specially).**

I concur with the opinion of the court on the issue of whether the jury instruction including possession was erroneous.

On the question of harmless error, I agree that the error in this case was not harmless based on the arguments of the parties. I note, however, that there is a substantial question as to whether harmless error is the proper approach under Amendment VI of the United States Constitution or article I, section 10 of the Iowa Constitution where an element of the offense is omitted or misdescribed in jury instructions. *See Neder v. United States*, 527 U.S. 1, 30, 199 S. Ct. 1827, 1844 (1999) (Scalia, J., concurring in part and dissenting in part) ("[D]epriving a criminal defendant of the right to have the jury determine his guilt of the crime charged—which necessarily means his commission of *every element* of the crime charged—can never be harmless."); *United States v. Pizzaro*, 772 F.3d 284, 299 (lst Cir. 2014) (limiting harmless error to situations where the element was *uncontested* and supported by overwhelming evidence); *Jordan v. State*, 420 P.3d 1143, 1155–58 (Alaska 2018) (embracing Justice Scalia's dissent in *Neder*); *State v. Pearson*, 804 N.W.2d 260, 265 n.1 (Iowa 2011) ("[O]mission in the jury instruction of the movement element requires a new trial on the going-armed charge."); *Harrell v. State*, 134 So. 3d 266, 270–75 (Miss. 2014) (rejecting the *Neder* majority and adopting the position of Justice Scalia); *State v. Kousounadis*, 986 A.2d 603, 616 (N.H. 2009) (rejecting the majority opinion in *Neder* as "widely criticized"). Because the question of per se error was not raised by the parties, the majority properly does not address the question of whether instructional error on an element gives rise to automatic reversal under the United States or Iowa Constitutions.